UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ICESTONE, LLC,

                Plaintiff,

           - v -

MATEC, S.R.L., EUROSTONE MACHINE
and PYRAMID SUPPLY, INC.,

                Defendant.
-----------------------------------------------------------x

**<u>REPORT AND
RECOMMENDATION</u>**

09-CV-1292 (CBA) (VVP)

       The Honorable Carol B. Amon referred the motion for a default judgment against

defaulting defendant MATEC Inc. ("defendant" or "MATEC") to the undersigned for a report

and recommendation as to whether default judgment is appropriate, and if so, as to the amount of

damages to be awarded to the plaintiff Icestone, LLC. This case involves the defendant's alleged

breach of contract and negligent installation of defective equipment in connection with the

plaintiff's agreement to purchase one MATEC Recycled Water System (the "MATEC System").

The plaintiff seeks $376,943 in damages, attorney's fees, costs and other relief as the court finds

just and proper.[1] As discussed below, while the court finds that liability is established as to the

plaintiff's breach of contract claim, deficiencies in the plaintiff's submissions in support of

damages lead the court to recommend that the motion for default be denied without prejudice at

this time.

---

[1] Pursuant to a settlement, the plaintiff's claims against Eurostone Machine and Pyramid Supply, the other
two defendants, were dismissed with prejudice on August 25, 2010 under Rule 41 of the Federal Rules of
Civil Procedure. Stipulation and Order of Dismissal, 8/25/10 (Dkt. No. 16); *see also* Dkt No. 17.

## I.   LIABILITY

The plaintiff commenced this action against MATEC on March 27, 2009 by the filing a complaint in this court.   The plaintiff is a New York limited liability company based in Brooklyn, New York and the defendant is an Italian corporation that conducts business in the State of New York.  Complaint ¶ 1.  Jurisdiction in this court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Complaint ¶ 1.  The defendant was properly served with process, but failed to answer or respond to the complaint, or otherwise move or appear in this action. Declaration of Theodore J. McEvoy, 12/11/09, ¶¶ 4, 8 (Dkt No 19).  The plaintiff moved for a default judgment, and on January 3, 2010, the Clerk of Court entered a default against MATEC, Inc. pursuant to Federal Rule of Civil Procedure 55.  Clerk's Entry of Default as to MATEC S.R.L., 1/10/10 (Dkt. No. 11).

Given the default, the well-pleaded allegations of the complaint are deemed admitted, except as to the amount of the plaintiff's damages.  *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009); *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Even so, "after [a] default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Leider v. Ralfe*, No. 01-CV-3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (citing *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).  Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief.  *See Au Bon Pain*, 653 F.2d at 65.

The well-pleaded allegations of the complaint establish the following facts. The plaintiff, Icestone, manufactures surfaces created from recycled glass and concrete, a process requiring large amounts of water. Complaint ¶ 8. On September 16, 2006, Icestone contracted with the defendant for the purchase, delivery and installation of the MATEC System in the amount of $126,976. Complaint ¶ 13. The plaintiff paid the full contract price by way of payments made either directly to MATEC or through payments to defendants Eurostone and Pyramid. Complaint ¶ 13. Almost immediately after the completed installation on or about March 7, 2008, the MATEC System experienced significant problems and defects. Complaint ¶ 14. Under the contract, the "Total Electrical Power" specifications for the MATEC System were to be 490 Volts, 60Hz[2] but upon installation, the MATEC System actually operated at 400 Volts, 50Hz. Complaint ¶ 16. Because of this defect, the electric motors included in the MATEC System operated at a load above the specified 42 Amps[3], which caused them to run at higher RPM[4], resulting in motors that overheated and burned out long before the expiration of their expected life span. Complaint ¶ 17. After successive overheating incidents, Icestone had to replace and/or retrofit, at its own cost, various pumps and pump motors that are part of the MATEC System; despite these repairs, these new motors continued to burn out. Complaint ¶¶ 18-19. The plaintiff repeatedly requested assistance pursuant to the contract's warranty provisions, but despite extensive correspondence and numerous visits by the defendants to Icestone's facility, the defect

---

[2] Hertz (Hz) is a unit of frequency equal to one cycle per second. "Hertz." Merriam-Webster Online Dictionary. http://www.merriam-webster.com (5 July 2011).

[3] Amps is an abbreviation of ampere, a unit of electrical current. "Ampere." The Free Dictionary. http://www.thefreedictionary.com (5 July 2011).

[4] RPM is an abbreviation of revolutions per minute. "RPM." The Free Dictionary. http://www.thefreedictionary.com (5 July 2011).

remained uncured. Complaint ¶ 20. This defect has disrupted Icestone's operations, causing Icestone to incur significant costs and damages including about 60 days of down time since installation, and forced Icestone to engage third-party consultants at its own cost to keep the MATEC System operational. Complaint ¶¶ 21-22, 24. Furthermore, because of continual pump motor failures, excessive amounts of mud had to be constantly cleaned out of the MATEC System, which resulted in additional sewer fees by the local sewer authority because of mud backup. Complaint ¶ 23. Despite repeated requests from Icestone, the defendant failed to turn over operational manuals, spare parts lists, spare parts diagrams and other documents needed to operate and repair the MATEC System. Complaint ¶ 25. Icestone has not returned the MATEC System but rather keeps it operational by relying on the aforementioned third party consultant repairs. Complaint ¶ 22. Icestone seeks an additional $279,000 for the repair of burned-out pumps, payments to MATEC and Pyramid technicians for work on the MATEC System, sewer cleaning fees and outside consultant fees. Complaint ¶ 26; Certification of Danielle Saint Louis, 11/1/10 ("Saint Louis Cert."), Exhibit C (Dkt. No. 19-2).

The complaint asserts four causes of action: (1) breach of contract by failing to deliver and install a system as specified in the contract; (2) breach of contract by failing to honor the warranty provisions; (3) negligence; and (4) product defect. Because the two breach of contract claims deal with common issues of law and fact, the two claims will be discussed in a single section below. Likewise, the plaintiff's negligence and product defect claims involve common issues of law and will therefore be addressed under a single tort section.

### A. Breach of Contract

The allegations in the complaint state a claim for breach of contract. In order to establish a claim for breach of contract under New York law, a complaint need allege "(1) the existence of

an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guarantee Trust Company of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corporation v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). The allegations of the complaint clearly establish the existence of an agreement between Icestone and MATEC, and Icestone's $126,976 payment to the defendant under the agreement establishes adequate performance by the plaintiff. Furthermore, the plaintiff specifies the two-fold manner in which the contract was breached: first, by the defendant's failure to deliver and install the MATEC system as specified in the contract and second, by breaching the warranty provisions contained therein. The breach of contract and breach of warranty claims, while contained in separate causes of action, are based on the same facts. The contract provides for installation of the MATEC System by the defendants and for a two-year warranty of the system. The plaintiff alleges that it experienced immediate problems with the operation of the MATEC System because the system as installed was defective and because the defendants improperly handled the installation of the system. Furthermore, the defendants thereafter failed to repair and maintain the system as required by the warranty. Complaint ¶¶ 11-22; *see also* Saint Louis Cert., Exhibit A (Dkt. No. 19-2) (attaching the contract). These allegations establish the defendant's liability for breach of contract for failure to properly install, maintain, and repair the MATEC System as provided for in the contract.

### B. Tort Claims

The plaintiff's claims for negligence and product defect, which both sound in tort, do not provide an avenue for recovery because the plaintiff has not alleged that it suffered any damages beyond those related to its breach of contract claim. "Under New York law, where a plaintiff seeks recovery under either a negligence or strict-products-liability theory for damage to a

product that is the subject of a contract, as contrasted with physical damage to a person or other property, the plaintiff may recover only contract damages." *Utility Metal Research Inc. v. Generac Power Systems Inc.*, 179 Fed. Appx. 795, 798 (2d Cir. 2006) (citing *Bocre Leasing Corp. v. General Motors Corp.*, 84 N.Y.2d 685, 694, 645 N.E.2d 1195 (1995) [("Tort recovery in strict products liability and negligence against a manufacturer should not be available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract . . . Tort law should not be bent so far out of its traditional progressive path and discipline by allowing tort lawsuits where the claims at issue are, fundamentally and in all relevant respects, essentially contractual, product-failure controversies.")]).

Both of the plaintiff's tort claims flow directly from the damage to the MATEC System. The plaintiff's negligence claim is based on the defendant's failure to properly deliver the product without defects and failure to maintain or repair it thereafter. Complaint ¶¶ 35-39. Thus, the plaintiff does not allege any injury to "a person or other property" above and beyond the damage sustained by the MATEC System itself. Additionally, in the absence of any tort recovery, the plaintiff will still be placed "in the same economic position [it] would have been in had the defendant fulfilled the contract." *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (citing *Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 495 (2d Cir. 1995)). Therefore, only contract damages should be awarded and the negligence claim does not provide the plaintiff with an additional avenue of recovery.

Similarly, the plaintiff's product defect claim is based on the defendant's delivery of the MATEC System in defective condition and does not allege any additional damage to persons or property as a result of the defect. Complaint ¶¶ 40-42. Furthermore, even if an injury had been alleged, "[t]he defect causing the injuries must be unreasonably dangerous to the owner of the

product or to third parties." *Butler v. Pittway Corporation*, 770 F.2d 7, 9 (2nd Cir. 1985) (citing

*Schiavone Construction Co. v. Elgood Mayo Corp.,* 56 N.Y.2d 667, 669, 436 N.E.2d 1322, 1323

(1982), *reversing on the dissenting opinion below,* 439 N.Y.S.2d 933, 937, 81 A.D.2d 221, 228

(1st Dep't 1981)). There is no allegation in the complaint that the product was unreasonably

dangerous, nor is there a reason to infer one. As the Second Circuit has observed,

> Many defects, of course, do not create such a hazard. Thus, a defective air conditioning
> system, *County of Westchester v. General Motors Corp.,* 555 F.Supp. 290, 292
> (S.D.N.Y.1983) (applying New York law), a computer malfunction, *Antel Oldsmobile-*
> *Cadillac, Inc. v. Sirus Leasing Co.,* 101 A.D.2d 688, 688-89, 475 N.Y.S.2d 944, 945 (4th
> Dep't 1984), a malfunctioning harvesting combine, [*Cayuga Harvester, Inc. v. Allis-*
> *Chalmers Corp.,* 95 A.D.2d 5, 27, 465 N.Y.S.2d 606, 621 (4th Dep't 1983)], and
> defective house siding, *Hemming v. Certainteed Corp.,* 97 A.D.2d 976, 976, 468
> N.Y.S.2d 789, 790 (4th Dep't 1983), have all been characterized as economic loss cases.

*Butler*, 770 F.2d at 10. Thus, absent a specific showing of an "unreasonably dangerous product,"

a products liability claim cannot proceed. Because the plaintiff does not allege that the MATEC

System caused any injury to persons or property or that it was "unreasonably dangerous," the

defective product claim must be categorized solely as one for economic loss, and therefore

damages are not recoverable under a tort theory.

## II.   MONETARY DAMAGES

Federal Rule 55(b) requires the court to make an independent assessment of damages

when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management*

*Dyn., Inc.,* 515 F.2d 801, 814 (2d Cir. 1975). Damages are proven through an evidentiary

hearing or through affidavits and other documentary submissions that provide a factual basis for

determining the amount of damages to be awarded. *See Greyhound Exhibitgroup v. E.L.U.L.*

*Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Transatlantic Marine Claims Agency, Inc. v. Ace*

*Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997). Having provided notice to the defaulting

defendant, the court is able to receive documentary evidence in lieu of holding an evidentiary hearing on damages. *See, e.g., Transatlantic Marine*, 109 F.3d at 111 ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'") (citing *Fustok v. ContiCommodity Services Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Here, the court has not held a hearing but is in receipt of the complaint and the certifications provided by the plaintiff to support its damages claims. The plaintiff provided the contract showing that it paid $126,976 for the MATEC System and receipts for $249,967 paid for repairs and consultant fees because of the product defects. *See generally* Saint Louis Cert., Exhibits A-C (Dkt. No. 19-2) (detailing the various expenditures of the plaintiff). In an Order dated July 13, 2011 (Dkt. No. 25), incorporated by reference here, the court requested that the plaintiff provide additional information the court required to make a recommendation as to damages. In sum, the court requested (1) legal authority for the plaintiff's request for the full contract price despite its decision to keep and continue use of the MATEC System, and (2) the monetary terms of the settlements with the two non-defaulting defendants and legal authority as to the extent the damages award should be offset by those amounts. To date, the plaintiff has not provided the court with the information requested. As a result, even though liability has been established, the deficiencies in the plaintiff's submissions with respect to damages prevent the court from recommending that the motion for default be granted at this time. The court instead recommends that the motion be denied without prejudice subject to renewal by a date certain set by the court.

## III.  ATTORNEYS' FEES AND COSTS

The plaintiff's complaint further seeks recovery of attorneys' fees and costs.  Under the American Rule, however, "it is well established that attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'"  *Summit Valley Indus., Inc. v. United Brotherhood of Carpenters & Joiners*, 456 U.S. 717, 721 (1982) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)); *see also Oscar Gruss & Son. Inc. v. Hollander,* 337 F.3d 186, 199 (2d Cir. 2003) ("Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule.").  "This policy 'provides freer and more equal access to the courts . . . [and] promotes democratic and libertarian principles.'"  *Oscar Gruss & Son,* 337 F.3d at 199 (quoting *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 22, 389 N.E.2d 1080 (1979) (alterations in original)).  Under the American Rule, however, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law."  *U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)); *see Alland v. Consumers Credit Corp.*, 476 F.2d 951, 956 (2d Cir. 1973); *see also United States v. Carter,* 217 U.S. 286, 322 (1910). Because the contract is silent as to attorneys' fees and the plaintiff's submissions are silent as to both the fees incurred and the basis for them, none should be awarded.

### CONCLUSION

In accordance with the above considerations, the undersigned hereby recommends that the motion for default judgment be denied without prejudice and that the plaintiff be provided

with an additional four to six weeks from the denial to renew its motion and to supply the information requested to support its damages claims.

*       *       *       *       *

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

                                        **SO ORDERED:**

                                        *Viktor V. Pohorelsky*

                                        VIKTOR V. POHORELSKY
                                        United States Magistrate Judge

Dated:   Brooklyn, New York
         September 9, 2011